## TUNICA-BILOXI TRIBE OF LOUISIANA
#\\\\\\\ 04-08-14

## RESOLUTION APPROVING THE SECOND AMENDED AND RESTATED OPERATING AGREEMENT FOR MOBILOANS, LLC

**WHEREAS**, the Tunica-Biloxi Tribe of Louisiana ("Tribe") was federally-recognized by the United States Secretary of the Interior on July 27, 1981;

**WHEREAS**, the Tunica-Biloxi Tribal Council ("Tribal Council") is the duly-elected governing body of the Tribe, as authorized by Article VII, Section 1, of the Constitution of the Tribe;

**WHEREAS**, the Tribal Council has the authority and responsibility to supervise and manage Tribal economic affairs and enterprises and to administer all property of the Tribe;

**WHEREAS**, the Tribal Council has the power under the Constitution to establish and regulate arms of the Tribe and subordinate organizations for business purposes;

**WHEREAS**, the Tribe has the inherent governmental power to create, certify, own, oversee and regulate arms of the Tribe and business entities, including limited liability companies and corporations;

**WHEREAS**, on July 26, 2011, pursuant to Tribal Council Resolution 24-11, the Tribal Council established MobiLoans, LLC ("MobiLoans") as an arm of the Tribe for business purposes, in the form of a limited liability company of which the Tribe is the sole Member;

**WHEREAS**, MobiLoans had been governed in accordance with that certain Limited Liability Company Operating Agreement of MobiLoans, LLC, dated July 26, 2011, between the Tunica-Biloxi Economic Development Corporation ("EDC") and the Tribe ("Operating Agreement") and pursuant to which, the EDC has been the sole Manager of MobiLoans;

**WHEREAS**, on February 15, 2013, the Tribal Council duly revoked and replaced the Operating Agreement with that certain Amended and Restated Operating Agreement of MobiLoans, LLC ("Amended and Restated Operating Agreement"):

**WHEREAS**, the Tribal Council has reviewed the Amended and Restated Operating Agreement and has determined that it is in MobiLoans' and the Tribe's best interest to revoke and replace the Amended and Restated Operating Agreement with the attached Second Amended and Restated Operating Agreement of MobiLoans, LLC ("Second Amended and Restated Operating Agreement"); and

**WHEREAS**, the Tribal Council has reviewed the Second Amended and Restated Operating Agreement and believes it is in MobiLoans' and the Tribe's best interest to adopt it.

**NOW, THEREFORE BE IT RESOLVED,** that the Tribal Council, as the governing body of the Tribe and pursuant to the laws and sovereign powers of the Tribe, hereby adopts the Second Amended and Restated Operating Agreement of MobiLoans dated April 8, 2013.

## CERTIFICATION

I, the undersigned, as Secretary-Treasurer of the Tunica-Biloxi Tribe of Louisiana, certify that the Tribal Council of said Tribe is composed of seven (7) members, of whom __, constituting a quorum, were present at a regular meeting thereof, duly called, noted, convened and held this 8th day of April, 2014; and that the foregoing Resolution was duly adopted by a vote of __ members in favor, __ opposed, and __ abstaining.

Dated this 8th day of April, 2014.

_____
Marshall Pierite, Chairman

ATTEST:

_____
Joey P Barbry, Secretary/Treasurer

# SECOND AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY
# OPERATING AGREEMENT
# OF
# MOBILOANS, LLC

This Limited Liability Company Second Amended and Restated Operating Agreement ("Agreement") dated as of April 8, 2014, relating to MobiLoans, LLC (the "Company" or the "LLC"), a limited liability company organized and chartered under the laws and the inherent sovereign authority of the Tunica-Biloxi Tribe of Louisiana (the "Tribe") as a limited liability company on the 26th day of July, 2011 (the "Organization Date") pursuant to Resolution #24-11 of the Tribal Council of the Tribe (the "Tribal Council"), is effective as of the Organization Date, by the Tribe, in its capacity as the sole member of the Company (the "Member").

## ARTICLE I

### Organization; Name and Principal Place of Business

Section 1.1   **Organization: Adoption of Amended and Restated Operating Agreement.** The Member hereby ratifies and approves the organization of the Company, hereby revokes the prior Limited Liability Company Operating Agreement dated as of July 26, 2011, and the prior Amended and Restated Limited Liability Company Operating Agreement dated as of February 15, 2013, and hereby replaces such prior Agreements with this Second Amended and Restated Limited Liability Company Operating Agreement.

Section 1.2   **Name and Principal Place of Business.** Unless the Member shall determine otherwise, the name of the Company shall be MobiLoans, LLC, and the Company's principal place of business shall be located at 150 Melacon Road, Marksville, Louisiana 71351.

## ARTICLE II

### Business, Purposes, Activities and Term of Company

Section 2.1   **Business, Purposes and Activities.** The Company is created by the Tribal Council as an economic arm of the Tribe. The Company's primary purpose is to engage in lending and related activities that will generate additional revenues for the Tribe. The Company may engage in any lawful business activity. More specifically, the Tribal Council authorizes and directs the Company to pursue the following:

   (a)   Development of a lending program(s) based and operated on the Reservation in accordance with Tribal and applicable federal law;

   (b)   Pursuit of related business opportunities that are viable, economically feasible, administratively efficient and profitable;

(c) Generation of revenues that will support the operations of the Company and provide additional income for the Tribe;

(d) Establishment of accounts in the name of the Company for the benefit of the Company and/or as necessary to accomplish the above purposes; and

(e) Taking all action necessary to accomplish the above purposes and any other lawful purpose incidental thereto, and such other activities as directed by the Tribal Council.

Section 2.2   Conduct of Business. The Manager (as herein defined) at any time may establish other business offices or conduct its meetings at sites other than the principal place of business of the Company, as the Manager deems necessary for the efficient operation of the business of the Company.

Section 2.3   Term. The term shall continue perpetually unless the Company is dissolved pursuant to Section 5.1.

## ARTICLE III

### Member; Manager; Authority of Manager and Member

Section 3.1   Members. The Member shall be the sole member of the Company and shall hold one hundred percent (100%) of the interests in the Company.

Section 3.2   Manager. Subject to the powers of the Member hereunder, the Company shall be managed by a Manager (the "Manager"). The Manager of the Company shall hereafter consist of a four person Board of Managers ("Board"), which shall act by majority vote. The initial members of the Board shall be Brenda W. Lintinger, Marshall Pierite, Harold Pierite and David Rivas ("Initial Board"). All members of the Board must be enrolled members of the Tribe and at least two (2) members of the Board must be sitting members of the Tribal Council; provided, however, the Initial Board members appointed herein shall serve for eight year terms, regardless of whether they continue to serve on the Tribal Council. Vacancies on the Initial Board shall be filled by majority vote of the remaining members of the Initial Board. Members of the Initial Board shall be removed only for cause by majority vote of the Initial Board. Thereafter, the Tribal Council shall have the right to remove or appoint all subsequent members of the Board after the expiration of the eight year terms of the Initial Board. The act of a majority of the members of the Board shall be the act of the Manager, it being intended that the Board acts as a single Manager as contemplated in the Company Charter and that no member of the Board has the authority to act individually as the Manager to bind the Company. The Board shall meet at least bi-weekly and shall meet promptly if directed by the Chairman of the Tribe. The members of the Board may participate in and act at any meeting of the Board by means of conference telephone or similar communications medium by which all persons participating in the meeting can hear each other. Participation in such a meeting shall constitute attendance and presence in person at such meeting. Any member of the Board may call a meeting of the Board with two (2) days notice. Any action of the Manager may also be taken without a meeting if a

consent in writing, setting forth the action so taken, is signed by each member of Board entitled to vote with respect to the subject matter thereof. The Board shall be responsible for the management of the Company and subject to the terms of this Agreement, including without limitation, Section 3.5, shall have the right, power and authority to manage, direct and control all of the business and affairs of the Company, to transact business on its behalf, to sign for it or on its behalf or otherwise to bind the Company. Each member of the Board shall serve in such capacity until he or she resigns or is removed in accordance with this Section 3.2.

    3.2.1  Qualifications to Serve on the Board. The Initial Board shall be required to undertake training consistent with industry best practices and applicable law. Subsequent members of the Board must possess qualifications and undertake training consistent with industry best practices and applicable law.

    3.2.2  Board Meetings with Tribal Council. The Board shall meet with and report to the Tribal Council not less than once each fiscal quarter (and such other times as requested by the Chairman of the Tribe) and shall submit monthly financials of the Company to the Tribal Council.

    3.2.3.  Appointment of Initial Chief Executive Officer. The initial Chief Executive Officer ("Initial Chief Executive Officer") shall be Marshall Pierite, who shall serve an initial term of eight years. The Initial Chief Executive Officer shall be removed only for cause by majority vote of the Initial Board. Vacancies in the position of Initial Chief Executive Officer shall be filled by majority vote of the Initial Board. After the expiration of the eight year term of the Initial Chief Executive Officer, subsequent Chief Executive Officers may be appointed in accordance with Section 3.5(b).

    Section 3.3  Member. The Member shall have the right, power and authority to appoint one or more officers of the Company, having such titles and responsibilities as the Member may determine, and to delegate to such officer to serve at the pleasure of the Member.

    Section 3.4  Tribal Action. The Tribe is and shall at all times be the sole owner and sole member of the Company. All action and power exercised by the Tribe shall be by action officially taken by the Tribal Council during a duly convened meeting.

    Section 3.5  Powers of Tribal Council. Notwithstanding anything contained herein to the contrary, the following actions of the Manager and of the Company may be taken only with the prior written approval of the Tribal Council:

    (a)  Adoption of Annual Budget and Business Plan;

    (b)  Appointment of Executive Director, Chief Executive Officer (other than the Initial Chief Executive Officer hereby appointed in accordance for with Section 3.2.3 for the term stated therein), Chief Operating Officer or equivalent position;

(c) Sale or transfer of any asset of the Company outside the Annual Budget and Business Plan or outside the ordinary course of business;

(d) Execution of any contract waiving the immunities, including the immunity from lawsuits, of the Company;

(e) The commitment of any resource, financial or otherwise, of the Tribe;

(f) The creation of any obligation that burdens the Tribe or its resources;

(g) Amendment of the Charter or this Agreement; and

(h) Approval of any written agreement whereby the Company participates with any other person or entity in any partnership, joint venture, limited liability company or other business form or entity.

Section 3.6   Insider Contracts. An officer of the Company and any member of the Board shall be disqualified from conducting business or contracting with the Company for any purpose other than employment or compensation in accordance with this Agreement.

Section 3.7   Indemnification. Each person who was or is a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding"), by reason of the fact that such person or a person for whom such person is the legal representative is or was a manager, member, director, officer, employee or agent of the Company or is or was serving at the request of the Company as a director, officer, member, manager, employee or agent of another corporation or of a partnership, limited liability company, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such Proceeding is alleged action or inaction in an official capacity or in any other capacity while service as a director, officer, manager, member, employee or agent of the Company, shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the Tribe as the same exist or may hereafter be amended, against all costs, charges, expenses, liabilities and losses (including attorneys' fees, judgments, fines, or penalties and amounts paid or to be paid in settlement and amounts expended in seeking indemnification granted to such person under applicable law, this Article III or any agreement with the Company) reasonably incurred or suffered by such person in connection therewith, and such indemnification shall continue as to a person who has ceased to be a director, officer, manager, employee or agent of the Company, or who served in any other capacity on behalf of the Company, and shall inure to the benefit of such person's heirs, executors and administrators. The right to indemnification conferred in this Article III shall be a contract right and shall include the right to be paid by the Company the expenses incurred in defending any Proceeding in advance of its final disposition. In no event shall anything herein contained be so construed as to permit the Manager to authorize payment of, or the Company to pay, any amount for any purpose where a director, member of the Board, or officer was engaged in any action or activity known by such person while so engaged to be unlawful or in any action or activity constituting willful misfeasance, bad faith, gross negligence or reckless disregard of such person's duties and obligations to the Company and the Tribe. The rights set forth herein shall not be exclusive of other rights to which the Manager, the Member or any officer may be

entitled as a matter of law. The Company may, by action of the Manager, provide indemnification to employees and agents of the Company with the same scope and effect as provided to the Manager, Member and officers of the Company pursuant to the foregoing provisions of this Agreement.

## ARTICLE IV

### Amendment of Agreement; Governing Law

Section 4.1   Amendments. This Agreement may be amended only by a writing adopted by Resolution of the Tribal Council.

Section 4.2   Governing Law. The LLC shall be governed by the laws of the Tribe and applicable federal law.

## ARTICLE V

### Dissolution

Section 5.1   Dissolution. The LLC may be dissolved only by action of the Tribal Council. Upon dissolution, all assets of the LLC shall be distributed at the direction of the Tribal Council; otherwise, the Company shall have a perpetual existence.

## ARTICLE VI

### Sovereign Immunity and Waiver

Section 6.1   Status of Tribal Entity. As an arm of the Tribe, an entity wholly-owned by the Tribe and as a Tribally-chartered entity, the Company is clothed by tribal and federal law with all the privileges and immunities of the Tribe, except as may be specifically limited by the Charter, including sovereign immunity from suit in any state, federal or tribal court. Nothing in the Charter or this Agreement shall be deemed or construed to be a waiver of sovereign immunity of the Company from suit, consent to suit, or consent of the Company or the Tribe, to the jurisdiction of the United States or of any state with regard to the business or affairs of the Company or to any cause of action, case or controversy, except as provided herein.

Section 6.2   Sovereign Immunity of Company; Waiver. The sovereign immunity of the Company may be waived only by express resolutions of the Company and of the Tribal Council. The Manager may request from the Tribal Council such a waiver, but only when necessary to secure a substantial advantage or benefit to the Company. Any waiver of sovereign immunity shall not be general but shall be specific and limited as to scope, duration, grantee, transaction, property or funds, if any, of the Company subject thereto. Neither the power to waive sovereign immunity as provided in the Charter, nor any express waiver of sovereign immunity by resolution of the Tribal Council shall be deemed a consent to the levy of any

judgment, lien or attachment upon any property of the Company other than property specifically pledged or assigned, or upon any property of the Tribe.

Section 6.3   Sovereign Immunity of the Tribe. All inherent sovereign rights of the Tribe as a federally-recognized Indian tribe are hereby expressly reserved, including sovereign immunity from suit in any state, federal or tribal court. Nothing in the Charter, this Agreement or any resolution of the Company shall be deemed or construed to be a waiver of sovereign immunity from suit of the Tribe or to be a consent of the Tribe to the jurisdiction of the United States or of any state with regard to the business affairs of the Company or the Tribe or of any cause of action, case or controversy, except as provided herein.

Section 6.4   Credit of the Tribe and Assets of Company. Nothing in the Charter or this Agreement, nor any activity of the Company, shall implicate or in any way involve the credit of the Tribe. The Company shall have only those assets formally assigned to it by the Tribal Council, together with those assets it may acquire or generate from other sources and business activities. No activity of the Company nor any indebtedness incurred by it shall implicate or in any way involve any assets of the Tribe not expressly assigned to the Company in writing.

**MEMBER:**
Tunica-Biloxi Tribe of Louisiana

By: Marshall Pierite
    Chairman

*[Certification Follows]*

## CERTIFICATE OF SECRETARY/TREASURER
## OF
## THE TRIBAL COUNCIL

This Second Amended and Restated Limited Liability Company Operating Agreement of MobiLoans, LLC was adopted and approved by executive action of the Tunica-Biloxi Tribal Council as of April 8, 2014, by Resolution #~~~~~ 04-08-14

TUNICA-BILOXI TRIBE OF LOUISIANA

By: _____
Name: Joey P. Barbry
Its: Secretary/Treasurer