# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ALICIA EVERETTE : 
 : 
 : 
 v. : Civil No. CCB-15-1261
 : 
 : 
JOSHUA MITCHEM, *et al*. : 
 : 

## MEMORANDUM

Alicia Everette seeks to bring a class action lawsuit against Joshua Mitchem; Jeremy Shaffer; Scott Tucker; NDG Financial Corporation; MobiLoans, LLC ("MobiLoans"); and Riverbend Finance, LLC ("Riverbend") on behalf of consumers who received payday loans between May 1, 2012, and May 1, 2015, from the following companies: Action Payday, Bottom Dollar Payday, Ameriloan, United Cash Loans, CashTaxi.com, MobiLoans, or Riverbend Cash. Everette requests an order certifying this lawsuit as a class action; a judgment against the defendants for violations of various Maryland commercial laws and the Electronic Fund Transfer Act, 15 U.S.C. § 1693; and the costs of litigation and attorney's fees.

Now pending are MobiLoans' and Riverbend's motions to dismiss for lack of jurisdiction, as well as the plaintiff's motion for discovery. The court will address the remaining motions to dismiss filed by Mitchem, Shaffer, and Tucker in a separate opinion. An order of default was entered against defendant NDG Financial Corporation on August 6, 2015. The issues have been fully briefed, and no hearing is necessary. *See* Local R. 105.6 (D.Md.2014). For the reasons stated below, Everette's motion for discovery will be denied, and MobiLoans' and Riverbend's motions to dismiss will be granted.

1

## BACKGROUND

Everette obtained a loan from MobiLoans, a tribal lending entity wholly owned by the Tunica-Biloxi Tribe of Louisiana, in 2013. (Compl. ¶¶ 101, 107, ECF No. 1.) Also in 2013, Everette received two payday loans from Riverbend Cash, which is owned and operated by Riverbend, a tribal lending business owned by the Fort Belknap Indian Community. (Compl. ¶¶ 114, 121.) The plaintiff claims that MobiLoans and Riverbend engaged in unlawful consumer lending and collection practices. (*See* Compl. ¶¶ 27-28, 106-113, 120-128.) MobiLoans and Riverbend filed motions to dismiss for lack of subject matter jurisdiction. Both defendants argue they are "arms of the tribe" entitled to tribal sovereign immunity because tribes created the lending companies under tribal law, tribes have complete ownership and control over the companies, and the companies protect the tribes' sovereignty by funding governmental services for tribal members. In response, the plaintiff argues that Riverbend and MobiLoans are not entitled to tribal sovereign immunity because they are not tribes, traditional government agencies, or casinos, but are instead "mere business[es]" engaging in off-reservation commercial activity; they are limited liability companies, and therefore a judgment against them will not reach the tribes' assets; and granting the defendants sovereign immunity would leave the plaintiff without a judicial remedy. (Pl.'s Opp'n 5-13, ECF No. 40.)

## ANALYSIS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). The plaintiff bears the

2

burden of proving that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008). Moreover, "[w]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings . . . ." *Blitz v. Napolitano*, 700 F.3d 733, 736 n.3 (4th Cir. 2012) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

### I. Jurisdictional Discovery

Both defendant lending companies have provided substantial evidence that they are wholly owned by tribes and were formed under tribal law to raise revenue for the tribes. MobiLoans and Riverbend have filed declarations of tribal members and officers of the companies attesting to the facts stated in this opinion, as well as copies of tribal resolutions that created the companies. Everette has failed to identify any specific facts to support her assertion that tribes do not own, operate, and control MobiLoans and Riverbend. "When a plaintiff offers only speculation or conclusory assertions…, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 402 (4th Cir. 2003); *see also White v. Univ. of California*, 765 F.3d 1010, 1025 (9th Cir. 2014) (upholding denial of jurisdictional discovery where the district court concluded that an entity was an "arm of the tribe" and the plaintiff offered "only speculative arguments" that the entity was not entitled to sovereign immunity). Because there is no evidence that tribes do not own and control MobiLoans and Riverbend, and permitting jurisdictional discovery would undermine the purposes of the sovereign immunity doctrine, the plaintiff's motion for jurisdictional discovery will be denied.

## II. Tribal Sovereign Immunity

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). Abrogation or waiver "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58 (internal citations and quotation marks omitted). "Sovereign immunity deprives a court of jurisdiction." *United States v. Jones*, 225 F.3d 468, 469 (4th Cir. 2000).

The Supreme Court has made clear that tribes are entitled to sovereign immunity when they engage in off-reservation commercial activity. *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2028 (2014); *Kiowa*, 523 U.S. at 760 ("Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation."). Unless Congress chooses to limit tribal sovereign immunity, tribes will continue to be immune from suits arising from a tribe's commercial activities, even when they take place off Indian lands. *Bay Mills Indian Cmty.*, 134 S. Ct. at 2037 ("[I]t is fundamentally Congress's job, [not the Supreme Court's], to determine whether or how to limit tribal immunity."). The settled law of tribal sovereign immunity is not without unfortunate consequences. *See id*. at 2052 (Thomas, J., dissenting) ("payday lenders... often arrange to share fees or profits with tribes so they can use tribal immunity as a shield for conduct of questionable legality").

"Tribal sovereign immunity may extend to subdivisions of a tribe, including those

engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010). To determine whether an entity is entitled to sovereign immunity as an "arm of the tribe," courts examine several factors, including: "(1) their method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Id*. at 1181; *see also White*, 765 F.3d at 1025 (adopting the same factors). The sixth factor examines "the policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities." *Breakthrough Mgmt. Grp., Inc.*, 629 F.3d at 1187. "Those policies include protection of the tribe's monies, as well as preservation of tribal cultural autonomy, preservation of tribal self-determination, and promotion of commercial dealings between Indians and non-Indians." *Id.* at 1188 (internal citations and quotation marks omitted).

Applying the *Breakthrough* factors to MobiLoans and Riverbend leads to the conclusion that both defendants are "arms of the tribe" entitled to immunity. The first factor, the method and creation of MobiLoans and Riverbend, weighs in favor of this finding. MobiLoans is organized and chartered under the laws of the Tunica-Biloxi Tribe of Louisiana. (Decl. of Marshall Pierite ¶ 6, MobiLoans Mot. Dismiss Ex. A, ECF No. 21-2; MobiLoans Charter Art. I, MobiLoans Mot. Dismiss Ex. A-1, ECF No. 21-3; MobiLoans Operating Agreement §§ 2.1, 6.1, MobiLoans Mot.

Dismiss Ex. A-2, ECF No. 21-4.) Riverbend was established by the Fort Belknap Indian Community's government under tribal law, and it operates pursuant to tribal law. (Decl. of Michelle Fox ¶ 6, Riverbend Mot. Dismiss. Ex. 1, ECF No. 22-2; Riverbend Articles of Organization, Riverbend Mot. Dismiss Ex. 1-A, ECF No. 22-2; Decl. of Mark Azure ¶ 6, Riverbend Mot. Dismiss Ex. 2, ECF No. 22-3.)

The second factor, the purpose of the entities, also weighs in favor of immunity because the tribes created the companies to financially benefit the tribes and fund governmental services. The MobiLoans operating agreement states that "[t]he Company's primary purpose is to engage in lending related activities that will generate additional revenues for the Tribe." (MobiLoans Operating Agreement § 2.1.) According to the president of the Fort Belknap Indian Community's tribal council, Riverbend was formed "to fulfill the fundamental government purpose of promoting the general welfare of the Tribe by encouraging economic development." (Azure Decl. ¶ 7.) The revenue from the lending companies benefits the tribes. The Tunica-Biloxi Tribe of Louisiana uses revenue from MobiLoans to fund various tribal governmental, educational, and social services, including Teach For America positions. (Pierite Decl. ¶ 7.) Revenue from Riverbend is used to provide essential services, including police, ambulance, and fire services, to members of the Fort Belknap Indian Community, and to reinvest in the tribe's other economic efforts, such as its store, restaurant, construction business, and information technology business. (Fox Decl. ¶ 7; Azure Decl. ¶ 8.)

The third factor, the structure, ownership, and management of the entities, also weighs in favor of granting immunity. MobiLoans is a limited liability company that is wholly owned and operated by the Tunica-Biloxi Tribe of Louisiana. (MobiLoans Charter Arts. I, V.) All four

members of MobiLoans' board of managers are enrolled members of the tribe, and at least two members of the board must be sitting members of the tribal council. (MobiLoans Operating Agreement § 3.2.) The tribe exercises a fair amount of control over MobiLoans, as MobiLoans must obtain the tribal council's approval to adopt a budget or business plan, appoint executive officers, sell or transfer any asset of the company outside the annual budget and business plan or the ordinary course of business, waive its immunity, commit or burden any tribal resource, amend its charter or operating agreement, and approve a written agreement between the company and another business. (MobiLoans Operating Agreement § 3.5.) Riverbend is a limited liability company wholly owned by the Fort Belknap Indian Community. (Riverbend Articles of Organization; Fox Decl. ¶ 6; Azure Decl. ¶ 6.) The chief executive officer of Riverbend is a member of the tribe. (Fox Decl. ¶¶ 1, 9.) The tribal council monitors and regulates Riverbend's economic ventures. (Azure Decl. ¶ 13.) Riverbend is located on the reservation, where tribal employees, who are also tribal members, originate all loans. (Azure Decl. ¶ 10; Fox Decl. ¶ 8.) Members of the tribe also work in Riverbend's call center, which is located on the reservation. (Azure Decl. ¶ 10.) About 70 members of the tribe on the reservation are employed by the tribe's lending operations, which include Riverbend and other entities. (*Id*.)

As for the fourth factor, both tribes clearly intended for the lending companies to share in the tribes' sovereign immunity. The MobiLoans charter states that "[t]he LLC shall be vested with all of the privileges and immunities of the Tribe, including, without limitation, the immunity from suit by any person or entity in any forum." (MobiLoans Charter Art. X.) The MobiLoans operating agreement provides that "[a]s an arm of the Tribe, an entity wholly-owned by the Tribe and as a Tribally-chartered entity, the Company is clothed by tribal and federal law

with all the privileges and immunities of the Tribe… including sovereign immunity from suit in any state, federal or tribal court." (MobiLoans Operating Agreement § 6.1.) Similarly, Riverbend's articles of organization state that "[t]he Company, being wholly owned by the Tribe, is to enjoy the Tribe's sovereign immunity. In furtherance thereof, the Tribe hereby confers on the Company sovereign immunity from suit to the same extent that the Tribe would have such sovereign immunity if it engaged directly in the activities undertake by the Company." (Riverbend Articles of Organization.)

The fifth factor also weighs in favor of granting immunity. The declarations submitted by tribal members involved in the lending businesses reveal that the tribes use revenue from MobiLoans and Riverbend to fund the provision of governmental services to tribal members. (*See* Pierite Decl. ¶ 7; Fox Decl. ¶ 7; Azure Decl. ¶ 8.)

Finally, the sixth factor, the purposes of sovereign immunity, is served by granting immunity to the defendants. MobiLoans and Riverbend "plainly promote and fund the Tribe's self-determination through revenue generation and the funding of diversified economic development." *See Breakthrough Mgmt. Grp., Inc.*, 629 F.3d at 1195. Extending sovereign immunity to the lending companies would protect a significant source of the tribes' revenue from suit, thereby "directly protect[ing] the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general." *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006). All six factors lead to the conclusion that MobiLoans and Riverbend are "arms of the tribe" that are closely enough related to the tribes to share in their sovereign immunity. Accordingly, the plaintiff's claims against MobiLoans and Riverbend are barred under the doctrine of tribal sovereign immunity and must be dismissed for lack of subject matter

jurisdiction.

## CONCLUSION

For the reasons stated above, the court will deny the plaintiff's motion for discovery and grant MobiLoans' and Riverbend's motions to dismiss.

A separate order follows.

November 20, 2015            /S/
Date            Catherine C. Blake
           United States District Judge